**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| OGNIAN KAMENOV, | |
| Plaintiff, | CIVIL ACTION NO. 3:11-0915 |
| v. | (JUDGE CAPUTO) |
| HIGHWOOD USA, LLC, | |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court is Defendant Highwood USA, LLC's ("Highwood") Motion for Summary Judgment. (Doc. 11.) In his Complaint, Plaintiff Ognian Kamenov ("Kamenov") alleges that he was terminated from his employment with Highwood on account of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*. In its motion for summary judgment, Highwood asserts that Kamenov was terminated because he refused to make an effort to fit into Highwood's culture of teamwork and collaboration. Because Kamenov has failed to present evidence that Highwood's proffered rationale for his termination was merely pretext for age discrimination, Defendant's motion for summary judgment will be granted.

## **I. Background**

In December 2003, when Kamenov was fifty-one (51) years old, he was hired to be Highwood's Technical Director. (*Def.'s Stmt. Mat. Facts*, "*Def.'s SMF*", ¶¶ 2, 4, 7.) The decision to hire Kamenov was made by Highwood's President and Chief Executive Officer, John Quarmley ("Quarmley"). (*Id*. at ¶ 3.)

In April 2008, Quarmley had a verbal discussion with Kamenov after he made an improper sexual reference to a female colleague. (*Kamenov Dep.*, Ex. 3.) The issue was documented by Quarmley as "inappropriate remarks/gestures to female coworkers" as "it was reported by several female employees that Ognian made suggestive or inappropriate

remarks and made the employees uncomfortable by staring." (*Id*.)

The following April, Quarmley assigned Bob Drogan ("Drogan") to manage all of Highwood's technical functions. (*Quarmley Dep.*, 56:13-19.) While Drogan did not have the technical expertise to perform Kamenov's job, Quarmley believed that Drogan was a structured manager with the skills to supervise Kamenov. (*Id*. at 56:20-57:16.) Kamenov, however, refused to work for Drogan. (*Id*. at 56:16-17.)

On April 9, 2010, Quarmley met with Kamenov to discuss his job performance. (*Quarmley Aff.*, ¶ 3.) At the meeting, Kamenov was advised that he needed to adopt a better team oriented attitude and a less "dictatorial style" of management. (*Id*. at Ex. F.) Following the April 2010 meeting, Kamenov's position with Highwood was changed from Technical Director to R & D Manager. (*Kamenov Dep.*, 31:6-7.) Although his job title and job description changed, Kamenov admitted that his salary and the job duties he performed remained the same. (*Def.'s SMF*, ¶ 20.) Pursuant to the R & D Manager job description, Kamenov was expected to mentor junior technical staff in the design of new products and to maintain records of R & D activities. (*Kamenov Dep.*, Ex. 2.)

On September 7, 2010, Quarmley again met with Kamenov to discuss his performance. (*Quarmley Aff.*, ¶ 4.) At this meeting, Quarmley told Kamenov to teach/mentor Adam Barilla ("Barilla") in tool design, to maintain a detailed R & D notebook, and to be a better team player. (*Id*. at Ex. 2.) Based on the September 7, 2010 meeting, Quarmley noted that Kamenov "refused to mentor [Barilla] without a contract," and that he was "very reluctant to work as a team member- needs/wants to be 'the hero.'" (*Id*.)

On October 6, 2010, Quarmely decided to terminate Kamenov after he missed a few meetings and was late to a meeting that day. (*Quarmley Dep.*, 79:1-4.) Quarmely terminated Kamenov because he did not fit into the company culture or the operating philosophy Highwood desired for managing and running its business. (*Id*. at 79:7-17.)

Kamenov was fifty-eight (58) years old at the time he was terminated. (*Def.'s SMF*, ¶ 27.)

During the course of his employment with Highwood, Kamenov had a good working relationship with Quarmley. (*Kamenov Dep.*, 32:16-20.)  Indeed, Kamenov could only identify a couple of occasions where he believed Quarmley treated him unfairly. (*Id*. at 33:19-23.) On one instance when Highwood was a new company in 2004, Quarmley "lost his nerves." (*Id*. at 34:18.) And, on the other occasion, Quarmley sent Drogan to speak about an issue with Kamenov instead of directly addressing the issue himself. (*Id.* at 33:19-23.)

Despite his general good working relationship with Quarmley, in late 2009 Kamenov "started not believing him." (*Id.*, at 32:23-24.) Kamenov could not attribute this to a certain event. (*Id*. at 32:25-33:6.) Instead, he characterized it as a feeling based on "instincts, internal instincts." (*Id*. at 32:16-23.) In particular, Kamenov noticed that Quarmley "stopped communicating" with him and became "very cold." (*Id*. at 39:10-14.) Based on this behavior, Kamenov believed that Quarmley terminated him due to his age because he "already gave most of what's needed for the company to be successful in the business." (*Id*. at 39:7-10; 54:14-16.) However, during the course of his employment, Quarmley, nor any other employee, ever made a comment about Kamenov's age. (*Def.'s SMF*, ¶¶ 31-32.)

Subsequent to Kamenov's termination, Highwood conducted an extensive external search in an attempt to find his replacement. (*Id*. at ¶ 48.) After the external search for Kamenov's replacement did not produce a qualified replacement, Quarmley made Barilla, who was twenty-four (24) at the time, responsible for tool design. (*Id*. at ¶ 49.) Barilla, however, did not receive a pay increase after taking over Kamenov's tool design responsibilities. (*Id*. at ¶ 50.) And, while Barilla is currently doing the job formerly held by Kamenov, Quarmley openly acknowledged that Barilla lacks Kamenov's technical expertise. (*Id*. at ¶ 47.)

3

In response to his termination from Highwood, Kamenov commenced the instant action alleging that he was terminated on account of his age in violation of the ADEA. Highwood filed an Answer to Kamenov's Complaint on June 15, 2011 and the action proceeded to discovery. After fact discovery closed on May 3, 2012, Highwood filed the instant motion for summary judgment. (Doc. 11.) In particular, Highwood argues that summary judgment is mandated in this case because Kamenov cannot introduce any evidence that might allow a jury to reasonably conclude that Highwood's articulated reason for his termination- incompatibility between Kamenov and Highwood's company culture- was pretext for age discrimination. Kamenov opposes Highwood's motion and asserts that a jury could easily find age discrimination in this case because "it is difficult to understand how the Plaintiff could be the technical brain behind a start-up that goes from six figures to over $15 Million gets fired for 'culture' reasons and is replaced by a man in his 20's." As Highwood's motion for summary judgment has now been fully briefed, it is ripe for disposition.

## II. Discussion

**A.    Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show

specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed.R.Civ.P. 56(e)).  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.    The Evidence Fails to Establish a Viable ADEA Claim**

The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 621(a)(1). Of course, the purpose of this statue is to "prohibit age discrimination in employment" and "to promote employment of older persons based on their ability rather than age."  29 U.S.C. § 621(b).

To succeed on an ADEA claim, a plaintiff must make a showing either by "(1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 261, 104 L. Ed. 2d 268, 109 S. Ct. 1775, 1796 (1989), or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in *McDonnell Douglas*." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (footnote omitted, referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Where indirect evidence is being relied upon, it is appropriate to proceed under the *McDonnell Douglas* analysis. *Id*.  Here, the evidence presented by Kamenov is most appropriately analyzed as indirect evidence under the *McDonnell Douglas* framework.

To establish a *prima facie* case of age discrimination, Kamenov must demonstrate "(1) he is over forty, (2) is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004) (citing *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)).  Once this is established, the employer then bears the burden of production[1] in order "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)).  "This burden is 'relatively light' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

---

[1] Of course, the burden of *persuasion* must always lie with the plaintiff. *Smith*, 589 F.3d at 690.  In *Gross v. FBL Financial Services*, 557 U.S. 167, 129 S. Ct. 2343, 2350 (2009), the Supreme Court held that the ADEA does not allow for mixed-motive age discrimination claims,  in other words, that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  Such 'but-for' causation must be established by a preponderance of the evidence, either direct or circumstantial. *Id.* at 2351.  The Supreme Court then rejected the burden shifting encouraged under the *Price Waterhouse* analysis–"The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 2352 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)).  In light of *Gross*, the Court of Appeals has determined that while shifting the burden of persuasion would be inappropriate, *McDonnell Douglas* only shifts "the burden of production (i.e., of going forward) . . . to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." *Smith*, 589 F.3d at 691.  "Hence, *Gross*, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying *McDonnell Douglas* to age discrimination claims." *Id.*

7

If the employer satisfies his burden, "the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Smith*, 589 F.3d at 690 (citing *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995)). "A plaintiff may evince pretext, and so defeat a motion for summary judgment, by either '(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Ullrich v. Sec'y of Veterans Affairs*, 457 F. App'x 132, 138 (3d Cir. 2012) (quoting *Fuentes*, 32 F.3d at 764). Proving pretext "'places a difficult burden on the plaintiff'" and requires the plaintiff to put forward "'such weaknesses, implausabilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Carlson v. Twp. of Lower Alloways Creek*, 452 F. App'x 95, 100 (3d Cir. 2011) (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)). Ultimately, the plaintiff bears the burden "to show age discrimination was the but-for cause of the complained-of action." *Wardlaw v. City of Phila.*, 378 F. App'x 222, 226 (3d Cir. 2010) (citing *Gross*, 129 S. Ct. 2343; *Smith*, 589 F.3d at 691).

For purposes of this summary judgment motion, Highwood has assumed that Kamenov can establish a *prima facie* case of age discrimination under the *McDonnell Douglas* framework. (Doc. 14, 8.) As such, the burden of production shifts to Highwood to identify a legitimate, non-discriminatory reason for Kamenov's termination. Here, through the testimony of Quarmley, Barilla, and Drogan, as well as by the documents related to Kamenov's performance reviews in 2010, Highwood has presented sufficient evidence to support its proffered reason that Kamenov was terminated because he refused to make an effort to fit into Highwood's culture of teamwork and collaboration.

In order to survive summary judgment, Kamenov must present evidence to discredit Highwood's proffered reason or adduce evidence demonstrating that discrimination was "more likely than not a motivating or determinative cause of the adverse employment action." *Ullrich*, 457 F. App'x at 138.

Kamenov has failed to meet his burden to survive summary judgment because he has not identified any evidence which would indicate that age was a determinative factor in his termination or that Highwood's proffered reason for Kamenov's termination was pretextual. In opposition to Highwood's motion for summary judgment, Kamenov points to thirteen facts which he suggests are indicative of age discrimination. These facts include: (1) an email to Kamenov from Todd Eyerly that he was the "best boss" Mr. Everly ever worked for; (2) Drogan attempted to cancel Plaintiff's lunch box training sessions; (3) Quarmley never responded to a draft employment agreement Kamenov provided him; (4) Kamenov was authorized to work at home; (5) no Highwood employee was capable of replacing him; (6) Highwood was a small company when he was hired but was a fifteen million dollar ($15,000,000.00) company when Kamenov was terminated; and (7) the absence of work performance complaints about Kamenov indicates he was terminated on account of his age.[2]

These facts, viewed collectively, are insufficient to satisfy Kamenov's "difficult

---

[2] Kamenov also asserts summary judgment should be denied because Highwood failed to produce a chart of all employees indicating age, sex, date of hire, and date of departure of its employees. According to Highwood, the request was not made until May 15, 2012, two weeks after fact discovery closed. (Doc. 9.) Based on the representations by Quarmley in his affidavit, approximately forty-four percent (44%) of its employees at the time Kamenov was terminated were in his same protected class. (*Quarmley Aff.*, ¶¶ 8-11.) Thus, even if the request for this document had been timely made, this chart would not establish the "young culture" Highwood sought to create according to Plaintiff, nor would it be evidence sufficient to create a genuine issue of material fact that Kamenov was terminated on account of his age.

burden" of demonstrating Highwood's stated justification for his termination is illegitimate and should be discounted. While these facts may show that Highwood benefited from Kamenov's technical expertise which helped advance the company from a small start-up to a multi-million dollar business, this in no way suggests that Kamenov's subsequent termination was based on his age. Similarly, the fact that Highwood admitted that it did not have an employee with the experience to replace Kamenov does not suggest that a jury could reasonably find age discrimination. Instead, such an admission supports Highwood's proffered reason for terminating Kamenov- incompatibility between the company's culture and Kamenov. Likewise, the fact that Highwood ignored Kamenov's proposed employment agreement does not demonstrate that he was terminated on account of his age. In sum, the facts offered by Plaintiff in support of his discrimination claim demonstrate, at most, that Quarmley began considering terminating Kamenov in the months preceding his actual termination in October 2010. What the facts do not demonstrate, however, is that age or discrimination played a determinative role, if any role at all, in Highwood's ultimate decision to terminate Kamenov.

Plaintiff's lack of evidence in support of his position that he was terminated on account of his age is most strongly supported by Kamenov's own testimony. Indeed, during his deposition, Kamenov testified that he believed he was terminated on account of his age based on his own "internal instinct" due to his subjective view that Quarmley became "very cold" towards him. (*Kamenov Dep.*, 32:16-23; 39:10-14.) Yet, despite his instincts, Kamenov admitted that Quarmley, nor any other Highwood employee, ever made a comment about his age. (*Id*. at 39:15-20.) Such a situation presents a stark contrast from cases where the plaintiff presents evidence at the summary judgment stage that other employees or supervisors indicated to the plaintiff that he or she was terminated on account of age. *See, e.g., Tokash v. Foxco Ins. Mgmt. Servs., Inc.*, No. 10-872, 2012 WL 1677437,

at *11-*12 (M.D. Pa. May 14, 2012) (testimony from the plaintiff that she was told by her supervisor that she was let go because of her age rendered summary judgment inappropriate).  In this case, Kamenov, outside of his own "internal instinct," has not identified any deposition testimony, affidavits, or other evidence of record indicating his termination was not based on an incompatibility with Highwood's company culture, but rather, that he was unlawfully terminated on account of his age.  As such, Kamenov has failed to meet his burden of production and demonstrate that Highwood's proffered rational for his termination was pretext for age discrimination.  Accordingly, Kamenov has not presented sufficient evidence to withstand Highwood's motion for summary judgment on his ADEA claim.

### III. Conclusion

For the above stated reasons, Highwood's motion for summary judgment will be granted.

An appropriate order follows.

| | |
|---|---|
| August 6, 2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |